IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY HUNT,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>BEN CURRY, Warden, et al.,<br><br>　　　　Respondents. | No. C 06-1144 RMW (PR)<br><br>ORDER DENYING<br>PETITION FOR WRIT OF<br>HABEAS CORPUS |

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("Board") decision denying him parole for the ninth time. The court ordered respondents[1] to show cause why the petition should not be granted. Respondents filed an answer addressing the merits of the petition and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and denies the petition.

---

[1] The proper named respondent in this action is Ben Curry, the acting Warden at the Correctional Training Facility in Soledad, where petitioner is incarcerated. Stanley v. Cal. Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is the proper respondent); Rule 2(a), 28 U.S.C. § 2254.

Order Denying Petition for Writ of Habeas Corpus
P:\prose\sj.rmw\hc.07\Hunt144den　　　　　　1

# I. BACKGROUND[2]

On May 22, 1983, petitioner shot and killed Larry Davis and wounded Helen Davis, his cousin, at his apartment in Inglewood.

## A. Mrs. Davis' Version of the Events

On the evening of the shooting, Mrs. Davis came in to the living room and had a discussion with petitioner about a clothes hamper. The discussion did not escalate into an argument, and the petitioner was very quiet. Mrs. Davis rejoined her husband and daughter where they sat on separate beds watching television. The bedroom door was open.

Suddenly, Mrs. Davis heard petitioner shouting in the hallway. She heard three gunshots. Petitioner entered the room and she pleaded with him not to shoot her. Petitioner pointed a shotgun very close to her leg and shot her in the thigh. When Petitioner left the room, Mrs. Davis found her husband lying on the bedroom floor bleeding from a large shotgun wound to the chest.

## B. Petitioner's Version of the Events

Petitioner testified at his January 2005 parole hearing as to his version of the offense on May 22, 1983. Petitioner told the Board that he was providing a place for his cousin, her husband, and their children to stay because they had recently moved from Pennsylvania to California. Petitioner had told the Davis' to stop bringing drugs into the petitioner's apartment. An argument ensued. On May 22, 1983, the Davis' went to Pomona. While they were gone, petitioner tried to install a bolt lock on the door. When the Davis' returned they began to argue with petitioner about changing the lock. Larry said something to Helen and the children whereupon they went into the bedroom, leaving Larry sitting in the living room. Petitioner was in the kitchen eating when he heard the laundry hamper fall over and saw Larry coming behind him with a knife. Petitioner ran to

---

[2] The underlying facts are drawn from the Parole Suitability Hearing Transcript (January 28, 2005) Resp. Ex. 4 at 12-18.

the couch where he kept a shotgun. When Larry saw the shotgun he ran back into the bedroom. Petitioner fired the shotgun through the bedroom door and went into the bathroom. Petitioner later left the bathroom and went to the bedroom. Mrs. Davis was in a crouched position when petitioner entered, and lunged at petitioner with a knife. Petitioner shot her in the leg. Larry was dead from gunshot wounds to the head. Petitioner went to a neighbor's residence and phoned the police.

When police arrived they found Mrs. Davis lying on the floor in the living room with a large wound in her thigh and Mr. Davis on the bedroom floor wounded. They found three gunshot holes in the bedroom door and four shotgun shells. Petitioner was arrested and (inaudible) with a shotgun and a live shotgun round (inaudible) the couch near him. Petitioner spontaneously stated, "I did it. I shot (inaudible)."

Petitioner was sentenced to fifteen years-to-life in prison after his conviction in the Los Angeles Superior Court for second degree murder (Cal. Penal Code § 187). Prior to his January 2005 parole hearing, petitioner had appeared before the Board on nine separate occasions and was denied parole each time. As of the January 2005 parole hearing, petitioner had served a total of twenty-two years in prison.

After the Board's decision denying him parole, petitioner filed a habeas petition in the state superior court, which was denied on June 3, 2005. Petitioner filed a habeas petition in the state appellate court, which was denied on September 28, 2005. Petitioner filed a habeas petition in the state supreme court, which was summarily denied on December 21, 2005. Petitioner filed the instant federal petition on February 16, 2006.

## II. DISCUSSION

A. **Standard of Review**

This court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication to the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. See Y1st v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v.

1  Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). Although Y1st was a procedural

2  default case, the "look through" rule announced there has been extended beyond the

3  context of procedural default. Id. At 1092 n.3 (citing Lambert v. Blodgett, 393 F.3d 943,

4  970 n.17 (9th Cir. 2004), and Bailey v. Rae 339 F.3d 1107, 1112-13 (9th Cir. 2003)).

   A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Subject Matter Jurisdiction**

   Respondent contends that this court does not have subject matter jurisdiction over the instant petition because California inmates have no federally-protected liberty interest in parole under California Penal Code section 3041. Resp. Answer at 5. Respondent acknowledged the Ninth Circuit's decision in Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006) to the contrary, but preserved his argument because a petition for rehearing was pending at the time respondent filed his answer to the instant habeas petition. Id.

   Although a convicted person has no inherent or constitutional right to early release on parole, a state's statutory parole scheme may create "a presumption that parole release will be granted" if it uses mandatory language. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 12 (1979). The Ninth Circuit made clear that because California's parole statute uses mandatory language, "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal.4th 1061 (2005)." Sass, 461 F.3d at 1125 (finding that the district court misread Dannenberg which did not hold that there is no constitutionally protected liberty interest in parole – but upholding denial of petition on other grounds). Because controlling Ninth Circuit authority holds that petitioner does have a constitutionally protected liberty interest in release on parole, this

court has subject matter jurisdiction pursuant to 28 U.S.C. § 2254 to decide whether petitioner's constitutional right to due process was violated by the Board's denial of parole.

**C.     Petitioner's Claim**

1. <u>The Board's Decision Was Based on "Some Evidence"</u>

Petitioner asserts that his right to due process was violated by the Board's decision denying him parole because there is no evidence to support its finding that he is unsuitable for parole. <u>See</u> Petition at 11. Petitioner maintains that the Board's denial of parole was based solely on the immutable circumstances of his commitment offense prior history, ignoring his rehabilitation demonstrated by his exemplary, disciplinary free programming for the past eighteen years, and therefore violated his right to due process. <u>Id.</u> at 11.

Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process. <u>McQuillion v. Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002). A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. <u>Sass</u>, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985)). Accordingly, if the Board's determination of parole suitability here is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005); <u>McQuillion</u>, 306 F.3d at 904.

Petitioner correctly asserts that Ninth Circuit case law has cautioned that the seriousness of the commitment offense fades over time as a predictor of suitability. <u>See</u> <u>Biggs v. Terhune</u>, 334 F.3d 910, 917 (9th Cir. 2003) ("A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."). However, whether the "some evidence"

standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [Board]." Superintendent v. Hill, 472 U.S. at 455-56.

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this court considers the regulations which guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal.Code of Regs., tit. 15 § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal.Code of Regs., tit. 15, § 2402(c)-(d).[3]

Additionally, the regulations contain a matrix of suggested base terms based on the degree and circumstances of the underlying murder offense. The matrix provides three choices of suggested base terms for several categories of crimes. See Cal.Code of Regs., tit. 15, § 2403. Although the matrix is to be used to establish a base term, this occurs only once the prisoner has been found suitable for parole. Id. § 2403(a). The statutory scheme places an individual's suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. Dannenberg, 34 Cal.4th at 1070-71.

---

[3] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal.Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal.Code of Regs., tit. 15, § 2402(d).

"While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should 'normally' receive 'uniform' parole dates for similar crimes, subdivision (b) provides that this policy applies 'unless [the Board] determines' that a release date cannot presently be set because the particular offender's crime and/or criminal history raises 'public safety' concerns requiring further indefinite incarceration." Id. at 1070 (emphasis omitted). In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071. The California Supreme Court's determination of state law is binding in this federal habeas action. Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

Here, the Board found that there was "some evidence" that petitioner was unsuitable for parole because "the commitment offense involved multiple victims, was carried out in a dispassionate and calculated manner, demonstrated a 'total disregard' for human suffering, and the motive was very trivial" (citations omitted). In Re Billy Hunt, Los Angeles Superior Court Order re: Writ of Habeas Corpus, Case No. BH003323, (June 3, 2005) at 1; Resp. Ex. 4 at 44-45. The evidence reviewed by the Board shows that petitioner shot his cousin while she was "begging for her life," and then killed her husband while the victims' children were present in the home. Resp. Ex. 4 at 49. Although petitioner disputed the circumstances of the crime, testifying that he shot the victim only to defend himself from being attacked with a knife, the Board was not required to accept his version of the facts, especially given that petitioner had previously given a different version of the facts to the probation officer.[4]

---

[4] Petitioner provided a different version of the offense in the 1984 probation officer's report. Petitioner stated that he and Larry Davis had argued, and that Mr. Davis told petitioner that he would "do something" to him. Petitioner stated that Mr. Davis whispered into Mrs. Davis' ear, then got a knife and went into a room. Petitioner then pulled out a laundry hamper and started washing clothes. Mrs. Davis then came out, saying something about, "Someone is going to have to kill you." Petitioner claims that Mrs. Davis snuck up on him, so he got his shotgun and fired through the door, high, to scare them off. However, Mr. Davis was pointing something at him, so petitioner "shot again lower." Petitioner also saw something in Mrs. Davis'
(continued...)

1 See Resp. Ex. 4 at 13-14; and Resp. Ex. 6 at 1; Resp. Ex. 5 at 8-9.

2       In addition, the Board considered other factors which were not related to the
3 commitment offense in denying parole. First, petitioner was previously incarcerated for
4 grand larceny. Resp. Ex. 4 at 18-19, 45; Resp. Ex. 6 at 2. Second, petitioner had a
5 history of alcohol and "experimental use" of marijuana, including being under the
6 influence of alcohol at the time of the murder and a prior driving under the influence
7 arrest. Resp. Ex. 4 at 19-21, 34, 45-46; Resp. Ex. 6 at 2. Third, the Board expressed
8 concern that petitioner had refused to comply with their repeated prior requests to
9 upgrade educationally and vocationally while in prison, stating, "it's just that you are just
10 doing your own program, doing what you want to do and it doesn't make any difference
11 what the Panel has requested of you to do." Resp. Ex. 4 at 46. Fourth, the Board found
12 that petitioner had not sufficiently participated in beneficial self-help because although
13 the petitioner was in AA and NA, and "knew one of the Steps," he was not "able to
14 expound" to the Board "all of the Steps," or how the program could curb petitioner's
15 alcoholism and drug abuse. Id. at 46-47. Fifth, the Board found that petitioner needed to
16 further develop his parole plans and suggested specific steps for him to take in
17 preparation for his next parole hearing. Id. at 23-28, 47. Finally, the Board considered
18 the "very strong" opposition to parole from the prosecuting Los Angeles County District
19 Attorney's Office pursuant to Penal Code § 3042. Id. at 47. Therefore, the Board's
20 denial of parole was based on "some evidence" including the callous nature of
21 petitioner's commitment offense and other factors tending to show petitioner's
22 unsuitability for parole at this time.

23       In summarily denying petitioner habeas relief, the state appellate court determined
24 that there was "some evidence" to support the Board's decision. Petition, Ex. 8.
25 Additionally, the superior court's fully reasoned order denying habeas relief noted that

---

28     [4](...continued)
hands, so he tried to shoot her in the foot. Resp. Ex. 5 at 8-9.

1  the serious nature of petitioner's commitment offense alone "is enough to deny petitioner
2  parole." Petition, Ex. 9 at 2. The superior court observed that the Board made additional
3  findings beyond the commitment offense to determine petitioner's unsuitability for
4  parole, which included evidence of petitioner's prior criminal record[5] and refusal to
5  participate in self-help programming, including vocational and educational upgrades.[6] Id.
6  Here, the superior court stated that petitioner's prior criminal record, and purported record
7  of refusing to rehabilitate himself while incarcerated, were not reliable indicators for the
8  Board to find petitioner unsuitable for parole. Id. Nevertheless, the superior court noted
9  that "the record reflects the Board considered petitioner's post conviction gains but still
10 concluded petitioner would pose an unreasonable threat to public safety" (citation
11 omitted). Id. at 2-3. Moreover, the superior court affirmed the Board's finding that
12 petitioner was "unsuitable for parole because the commitment offense involved multiple
13 victims, was carried out in a dispassionate and calculated manner, demonstrated a "total
14 disregard" for human suffering, and the motive was very trivial" (citations omitted).[7] Id
15 at 1.

16  Here, the Board's decision denying parole was based upon its review of the nature
17 and circumstances of the commitment offense, petitioner's prior criminal record, and
18 history of rehabilitation. See Resp. Ex. 4 at 44-51. The Board properly considered the
19 nature of the offense in its decision to deny petitioner parole. See In re Rosenkrantz, 29
20 Cal. 4th 616, 682-83 ("the [Board] properly may weigh heavily the degree of violence
21 used and the amount of viciousness shown by a defendant"). Additionally, the Board
22 relied on evidence of petitioner's prior criminal record and refusal to undertake self-help
23 programming, including vocational and education upgrades, to deny petitioner parole.
24 Although the superior court found that the Board could not rely on these factors to deny

---

[5] See Cal. Code Regs., tit. 15, § 2402(c)(2); note 3.

[6] See Cal. Code Regs., tit. 15, § 2402(d)(8), (9); note 3.

[7] See Cal. Code Regs., tit. 15, § 2402(c)(1)(A)-(E).

| | |
|---|---|
| 1 | petitioner parole, the court properly concluded that the heinous nature of petitioner's |
| 2 | commitment offense was "some evidence" to support the Board's findings. |
| 3 | Therefore, the court concludes that the state court's determination was not contrary |
| 4 | to, or an unreasonable application of, clearly established Supreme Court precedent, nor |
| 5 | was it based on an unreasonable determination of the facts in light of the evidence |
| 6 | presented. 28 U.S.C. § 2254(d)(1), (2). |

### III. CONCLUSION

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 12/27/2007

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

A copy of this ruling was mailed on __12/27/2007_____ to the following:

Billy Hunt
C-79786
Correctional Training Facility-Soledad
P.O. Box 689
Soledad, CA  93960-0689

Scott C. Mather
Deputy Attorney General
California State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA  94102-7004

Order Denying Petition for Writ of Habeas Corpus
P:\prose\sj.rmw\hc.07\Hunt144den                    12